UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DON MOODY,<br><br>    Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>    Defendants. | Case No. 5:15-cv-04378-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 10 |

Plaintiff Don Moody ("Moody") brings this §1983 action against the County of Santa Clara and the Director of the Social Services Agency ("SSA") and Bruce Wagstaff (collectively, "Defendants"), alleging violations of civil rights in connection with his termination from the position as the Public Guardian. Presently before the court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss ("Mot."), Dkt. No. 10.

The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. Having carefully considered the papers submitted by both parties, as well as the arguments of counsel at the hearing held on this matter, the court finds Defendants' Motion well-taken. Accordingly, the Motion to Dismiss will be GRANTED for the reasons explained below.

**I.   BACKGROUND**

Moody is the former Public Guardian of the County of Santa Clara. The Public Guardian is a position organized under the SSA's Department of Aging and Adult Services ("DAAS") for the County of Santa Clara. Compl. ¶¶ 17, 18 Dkt. No. 1. In his position as the Public Guardian, Moody was directly supervised by the Director of DAAS, who in turn reported to the Director of SSA, Bruce Wagstaff. Id. ¶ 19. Moody took over as the Public Guardian beginning in September

2008, seven months after the previous Public Guardian, Rob Cecil, was removed. Id. ¶ 22. Moody was put on administrative leave on September 25, 2014 and subsequently terminated. Id. ¶ 31.

### A. History and Public Scrutiny of the Office of the Public Guardian

Before Moody's tenure as Public Guardian, the Office of the Public Guardian ("the OPG" or "the Office") had been subjected to significant public criticism. In 1998, Santa Clara County Civil Grand Jury issued a report which "outlin[ed] deficiencies in the Public Guardian Office's operations and its policies and procedures." Id. ¶ 20. The County also retained global management consultant Keerthi Mandala who, in 2008, authored a report that identified sixteen operational issues at OPG, eleven of which were highlighted as "high risk" ("the Mandala Report"). Id. ¶ 21.

During Moody's tenure as the Public Guardian, the Office continued to receive significant media scrutiny. Id. ¶¶ 23-28. Notable publications included reports that the OPG was facing scrutiny for elder abuse and neglect published by Examiner.com in May 2012, reports that the Office was "unnecessarily taking control of elderly people's lives and denying them visitors," published by ABC 7 News in three November 2012 articles, and a report that the Office had "continu[ed] to spend [a] woman's money even after her conservatorship formally ended," published by ABC 7 News in a January 2014. Id. ¶¶ 23-25, 27. Additionally, the Santa Clara County Civil Grand Jury issued two more reports that were critical of OPG, one in 2013 and another in 2014. The 2013 Report, entitled "Improvements Are Needed in the Office of the Public Administrator/Guardian/Conservator," determined that seven of the "operational issues" that had been identified by the Mandala Report remained unaddressed and made various suggestions for improvement. Id. ¶ 26. The 2014 Report, entitled "Probate Conservatorship: A Safety Net In Need Of Repair," was initially issued in response to a complaint and resulted in "a follow-up review of the Public Guardian's policies and procedures for conservatorships for the elderly." Id. ¶ 28. The 2014 Report "identified issues of concern and recommendations for improvement" but did not accuse Moody as being the cause of any of the alleged problems. Id. None of the articles identified Moody by name or suggested that he had been personally responsible for the problems

at the Public Guardian's office. Compl. ¶ 30.

However, after the 2014 Report was issued, Moody alleges that County employee Barbara Herlihy sent an unsolicited letter to the Civil Grand Jury that "blamed [him] for all of the problems in the office and expressed [her] opinion that he should not keep his job" (the "Herlihy Letter"). Id. ¶¶ 29-30. Moody alleges that the Herlihy Letter was "leaked by the County" to the *San Jose Inside*, where it was published online and remains publicly available.[1] Id. ¶ 29. Moody does not allege, nor could the court determine, which news article published by the *San Jose Inside* actually references or links to the Herlihy Letter, but the court notes that the letter itself appears to have been written on June 24, 2014 and received by the Civil Grand Jury on July 7, 2014. See id.

### B. Moody is Placed on Administrative Leave and Terminated

On September 25th, 2014, Moody was placed on administrative leave with the recommendation that he be terminated as the Public Guardian. Id. ¶ 31. On this date, Wagstaff gave Moody a letter stating that he would be placed on administrative leave until further notice and that Wagstaff was recommending that he be terminated (the "Termination Letter"). Id. The Termination Letter provided that the reason for the recommendation was Moody's alleged violation of County Merit System Rules, Article 11, which states:

> Section A25-301(a)(2) Inefficiency, incompetence, or negligence in the performance of duties, including failure to perform assigned task or failure to discharge duties in a prompt, competent and responsible manner.

Id.; see also Ex. A to Mot. to Dismiss (redacted copy of Moody's Termination Letter), Dkt. No. 10-2. The Termination Letter also informed Moody that he was entitled to a Skelly hearing, and also had the right to appeal the Skelly decision to the Santa Clara County Personnel Board. Ex. A, Dkt. No. 10-2. Following the meeting with Wagstaff, Moody alleges that he was "immediately [required] to turn over his badge and work phone, and was escorted out of the building in full view

---

[1] As alleged in the Complaint, a PDF copy of the Herlihy Letter is available online at http://www.sanjoseinside.com/wp-content/uploads/2014/09/Probate-Conservator-Audit.pdf. See id. ¶ 29.

3
Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

of the public" and his then co-workers. Compl. ¶ 33. Moody alleges that his predecessor, Mr. Cecil, had not been escorted from the workplace in a similar manner at the time of his termination. Id. ¶ 36.

On the same day as Moody's termination, the *San Jose Inside* published an article entitled, "County Public Guardian Put on Leave, Escorted Out of Building." Id. ¶ 34. Moody alleges that the County "intentionally leaked to the press information about Mr. Moody's termination, including the fact that he had been physically escorted from the premises." Id. ¶ 35. Since his termination, Moody contends that he has been "unable to secure work in his chosen profession." Id. ¶¶ 36-37.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the… claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 556-57. A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal of a claim under Rule 12(b)(6) may be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988); see Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

At the motion to dismiss stage, the court must read and construe the complaint in the light most favorable to the non-moving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. "In all cases, evaluating a complaint's plausibility is a context-specific endeavor that requires courts to draw on ... judicial experience and common sense." Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014)

4

Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

(quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)).

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). In the event that a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv–Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).

## III. DISCUSSION

### A. "Stigma Plus" Cause of Action

The Supreme Court has long recognized that the "liberty" or "property" interests protected by the Due Process Clause contemplate a variety of protected interests, and "[t]he procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status." Paul v. Davis, 424 U.S. 693, 711 (1976). As a general rule, "injury to reputation, standing alone, is not a liberty or property interest sufficient to invoke the procedural protections contained in the Due Process Clause of the Fourteenth Amendment." Eberhard v. California Highway Patrol, 73 F. Supp. 3d 1122, 1130 (N.D. Cal. 2014); see also Ulrich v. City & Cty. of San Francisco, 308 F.3d 968, 982 (9th Cir. 2002). However, where a plaintiff alleges that a state action caused such egregious damage to the plaintiff's reputation so as to impact other protected rights, courts have recognized a limited cause of action arising under the Due Process Clause that has become known as a "stigma plus" claim. See Eberhard, 73 F. Supp. 3d at 1130.

To bring a stigma plus claim, a plaintiff must allege that a "state action not only caused the stigma of a damaged reputation, but also that the state action deprived the plaintiff of a protected liberty or property interest or a status recognized by the state." Id. (citing WMX Techs., Inc. v.

5
Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Miller, 197 F.3d 367, 376 (9th Cir. 1999) (en banc)). In the Ninth Circuit, a plaintiff can satisfy the "stigma plus" test under either of two theories: First, a plaintiff may assert that the injury to their reputation "caused the denial of a federally protected right," for example, where accusations made in the press by a prosecutor result in the denial of an impartial jury under the Sixth Amendment. Id. Or second, a plaintiff may allege that the injury to their reputation was "inflicted in connection with a federally protected right," such as "defamation in the course of termination of public employment by the state." Id. (citing Cooper v. Dupnik, 924 F.2d 1520, 1532 (9th Cir.1991)). Here, Moody's claim arises under the second theory, alleging that significant damage to his reputation was inflicted in connection with the termination of his employment from the OPG.

Under the second theory, "[a] defendant's remarks in connection with discharge from employment must contain egregious accusations such as 'charges of immorality, or dishonesty that can cripple an individual's ability to earn a living.'" Peter Turner v. City & Cty. of San Francisco, No. C-11-1427 EMC, 2012 WL 6631490, at *6 (N.D. Cal. Dec. 19, 2012), aff'd sub nom. Turner v. City & Cty. of San Francisco, 788 F.3d 1206 (9th Cir. 2015), and aff'd sub nom. Turner v. City & Cty. of San Francisco, 617 F. App'x 674 (9th Cir. 2015) (citing Hyland v. Wonder, 972 F.2d 1129, 1142 (9th Cir. 1992). To rise to the level of egregiousness required for a stigma plus claim, a defendant's remarks generally must go beyond mere accusations of incompetence. See Gray v. Union Cnty. Intermediate Educ. Dist., 520 F.2d 803, 806 (9th Cir. 1975) (finding that the defendant's accusations of "insubordination, incompetence, hostility toward authority, and aggressive behavior" – while unflattering – did not "import serious character defects such as dishonesty or immorality," and thus were not sufficient to state a due process claim); Wheaton v. Webb-Petett, 931 F.2d 613, 617 (9th Cir. 1991) (holding that "charges of incompetence or inability to get along with others do not" implicate a liberty interest); Turner, 2012 WL 6631490, at *6 (concluding that allegations of illegal hiring practices were "not sufficiently damning to create a stigma-plus claim."); see also Stretten v. Wadsworth Veterans Hosp., 537 F.2d 361, 366 (9th Cir. 1976) (explaining that the need for constitutional Due Process protections is not

6
Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

particularly strong for general disputes over an employee's workplace performance).

Additionally, to be actionable, an allegedly stigmatizing statement must be "substantially false" and "must occur in conjunction with the termination of employment." Turner, 2012 WL 6631490, at *6 (citing Campanelli v. Bockrath, 100 F.3d 1476, 1482 (9th Cir. 1996) and Siegert v. Gilley, 500 U.S. 226, 234 (1991)); see also Hyland, 972 F.2d at 1142 ("The federal Constitution is not concerned with every insult hurled in the heat of an employment dispute."). Where a plaintiff has suffered reputational damage as a result of such a statement, due process entitles the plaintiff to a "name clearing" hearing. Ulrich, 308 F.3d at 982 (citing Bollow v. Federal Reserve Bank, 650 F.2d 1093, 1100 (9th Cir. 1981)).

Here, there is no dispute that Moody was terminated from public employment, which satisfies the "deprivation of a protected liberty interest" – or "plus" – factor of a stigma plus claim. See Eberhard, 73 F. Supp. 3d at 1130. Rather, the question is whether Moody has alleged a reputational damage – or "stigma" – that is attributable to the Defendants' conduct. Though the Complaint's allegations regarding the specific elements of a stigma plus claim lack some clarity, it appears Moody alleges two possible "state actions" as the bases for his stigma plus claim: (1) the "act" of escorting Moody out of the building; and (2) the alleged "leak" of information about Moody to the media. For the reasons explained below, the court finds that, as currently plead, neither theory is sufficient to support a stigma plus due process claim.

    **i. The Act of Escorting Moody from the Office Building at the Time of His Suspension Cannot Sustain a Stigma Plus Claim**

Moody argues that "the act" of being escorted out of the building at the time of his suspension provides a sufficient basis for his stigma plus claim because it "made the statement that he engaged in, or was responsible for, the elder abuse and other acts that were alleged against the Public Guardian's Office." Pl. Opp. to Mot. to Dismiss ("Opp.") at 9-10, Dkt. No. 19. As presently plead, this theory fails for at least two reasons.

First, Moody has failed to allege sufficient facts to support his claim that the "act" of escorting him from the office building rises to the level of "egregiousness" required for a stigma

plus claim. Moody is correct that under certain circumstances, an "act" – as opposed to a verbal communication – can be considered a "statement." See, e.g., Texas v. Johnson, 491 U.S. 397, 404 (1989) (explaining that First Amendment protection "does not end at the spoken or written word" and "[i]n deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether an intent to convey a particularized message was present") (quoting Spence v. Washington, 418 U.S. 405, 410-411 (1974)); see also Fed. R. Evid. 801(a) ("'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."). However, it is a significant logical leap to suggest, as Moody does, that the act of escorting him out of the office made such a clear and negative statement about him that it "crippled" his ability to earn a living and stigmatized his reputation beyond repair. See Turner, 2012 WL 6631490, at *6. Rather, the court notes that such a practice could occur for a variety of normal, inoffensive reasons having nothing to do with an individual's character, and may well be considered standard in a workplace when an individual's employment ends.

Moody appears to base his argument on the theory that because numerous damaging accusations against the OPG were "put into the public sphere" during his tenure – including claims of elder abuse and financial mismanagement – Moody's termination, which was communicated publicly by the escort from the building, imputed these negative accusations directly to him, thereby significantly damaging his reputation. See Opp. at 9-10; Compl. ¶¶ 33-36. Although creative, Moody's "scapegoat" argument attempts to stretch the limitations of what might realistically be communicated through an act or gesture beyond any reasonable interpretation. Absent more, the mere act of escorting an employee out of an office building cannot realistically be construed as a public statement blaming the employee for any negative allegations associated with the employer. While a leader may be held accountable for failure in ways his or her subordinates will not, this is a risk attendant in assuming the responsibility of leadership. Moreover, public accountability for general failures of leadership is distinguishable from direct accusations of wrongdoing.

8

Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Based on the facts alleged in the Complaint, the court finds no basis to conclude that Defendants' act of escorting Moody from the building communicated or otherwise attributed to Moody any egregious, improper, or untrue accusations. The Complaint itself alleges that none of the critical articles about the OPG, such as those reporting on rumors of elder abuse, ever accused Moody of direct involvement and or even mention his name. Compl. ¶¶ 25, 28. It also merits noting that many of these articles were published well in advance of Moody's firing, making the public association between any of the allegations and Moody's termination even more tenuous. See id. ¶¶ 23-28. Indeed, the allegations in the Complaint fail to suggest that the "escort out" communicated anything more than the fact that Moody was no longer employed as the Public Guardian – a true fact.

Second, even if being escorted out of the office did amount to an egregious state action stigmatizing Moody's reputation, the argument is unsuccessful for the additional reason that Moody does not allege facts sufficient to attribute this action to Wagstaff, or as a result, the County. See Compl. ¶ 31. Consequently, Moody fails to plead that "the alleged 'stigma' and 'plus' are sufficiently coincident to support a due process claim" as to Wagstaff. See Eberhard, 73 F. Supp. 3d at 1130. While Moody alleges that Wagstaff was responsible for the decision to terminate his employment (the "plus"), the facts as alleged do not support a conclusion that Wagstaff was involved in or responsible for his escort from the building (the "stigma"). While Moody's Opposition brief asserts that "Wagstaff published stigmatizing statements about Moody by having him 'perp-walked' out of the building …" and "Wagstaff was the actor who terminated Moody and had him walked out of the building" (Opp. at 9, 14), there are no factual allegations in the Complaint itself that support these statements. Rather, the only allegations in the Complaint that refer to Wagstaff specifically are: (1) that Wagstaff is the Director of the SSA (Compl. ¶ 12; see also ¶ 19); (2) that as the Director of the SSA, Wagstaff has authority to "appoint, suspend or remove" other employees in the SSA (id. ¶ 19); and (3) that Wagstaff recommended Moody be terminated and provided Moody with the formal letter placing him on administrative leave and notifying him of the proposed termination (id. ¶¶ 31, 40, 41).

9

Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

As acknowledged by this court in Eberhard, the Ninth Circuit does not appear to have directly decided whether a stigma plus claim requires that the same government official be responsible for both the action depriving the plaintiff of a liberty interest (the plus), as well as the statement harming the plaintiff's reputation (the stigma). Eberhard, 73 F. Supp. 3d at 1131. However, the district court conducted a lengthy review of the instructive case law on this question and ultimately concluded "that the 'stigma' and 'plus' must be committed by the same state actor to state a due process claim with respect to claims against individual government officials." Id. (reviewing and citing Ninth Circuit cases Cooper, 924 F.2d at 1524 and Tibbetts v. Kulongoski, 567 F.3d 529, 538–39 (9th Cir. 2009), and comparing out of circuit cases URI Student Senate v. Town of Narragansett, 631 F.3d 1, 10 (1st Cir. 2011) and Hawkins v. Rhode Island Lottery Commission, 238 F.3d 112, 115–16 (1st Cir. 2001) with Velez v. Levy, 401 F.3d 75, 88–89 (2d Cir.2005)).

The court finds no reason to deviate from the Eberhard's well-reasoned analysis here. Because the Complaint lacks any specific allegations that Wagstaff was himself responsible for Moody being escorted out of the building upon his termination, the stigma plus claim is insufficiently plead as to Wagstaff.

In turn, because Moody alleges liability as to the County based on Wagstaff's alleged "final policymaking authority," Moody's claim against the County similarly fails. Liability against a county or other local government body will only be imposed pursuant to section 1983 when the government entity itself causes the constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). *Respondeat superior* does not apply to government liability under § 1983. Id. at 691. A government entity may be said to "cause" a violation giving rise to liability under Monell in any of three ways: (1) where the constitutional violation was the result of a longstanding government practice, policy, or custom; (2) where the individual responsible for the constitutional violation was a final policymaking authority for the government; *or* (3) where a "final policymaking authority" delegated or ratified the action of the individual responsible for the violation. See Ulrich, 308 F.3d at 984-85 (citing Monell, 436 U.S. at 694); Christie v. Iopa, 176

10
Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

F.3d 1231, 1235, 1238 (9th Cir. 1999) (providing that liability may be imposed on a county pursuant to Monell where the person causing the violation had "final policymaking authority" or "if the final policymaker 'ratified' a subordinate's actions."); Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989). Here, Moody appears to allege liability under the second approach, contending that because "Wagstaff was the actor who terminated Moody and had him walked out of the building, his actions alone make the County liable under Monell." Opp. at 14. However, having found that the Complaint failed to plead that Moody's escort from the building was attributable to Wagstaff, the court finds that the Complaint similarly lacks a sufficient basis to impose liability against the county.

### ii. Information Allegedly "Leaked" to the Press Regarding Moody

The second basis Moody relies on as the "stigma" of his stigma plus claim is the County's purported "leak" of negative information about him to the media. Compl. ¶ 29 (alleging that "A copy of [the Herlihy Letter] was leaked by the County to *San Jose Inside* and posted online."); ¶ 35 ("On information and belief, the County intentionally leaked to the press information about Mr. Moody's termination, including the fact that he had been physically escorted."); ¶ 45 ("On information and belief, including the aforementioned leak to the *San Jose Inside* and media reports of Mr. Moody's walkout, defendants disclosed Mr. Moody's name to local media outlets accusing him of incompetence and elder neglect or abuse."); ¶ 49 ("On information and belief, the County disseminated accusations to the press in an attempt to make Mr. Moody a scapegoat in order to deflect criticism away from those who were actually responsible for the conduct criticized by the press"); and ¶ 51 ("On information and belief, the County publicized stigmatizing information about Mr. Moody in connection with his termination.").

In theory, an allegation that Defendants intentionally leaked false and damaging information about Moody to the press could constitute a "state action caus[ing] the stigma of a damaged reputation." See Eberhard, 73 F. Supp. 3d at 1130; WMX Techs. 197 F.3d at 376. However, all of Moody's allegations to this effect only generally allege that "*the County*" leaked or disseminated this information; the allegations fail to assert with any degree of specificity *who*

11
Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

took this action on behalf of the County or *how* the County otherwise was responsible for sharing this information with the press. See Compl. ¶¶ 29, 35, 45, 49. 51. As discussed in the previous section, in order for the County to be held liable for these alleged leaks under Monell, Moody must allege that the leaks were either part of an official County policy or custom, or that the leaks were executed or ratified by someone with "final policymaking authority." Monell, 436 U.S. 661; see Ulrich, 308 F.3d at 984-85 Christie, 176 F.3d at 1235, 1238. The court finds no such allegations in the Complaint.

Accordingly, even assuming that the information allegedly leaked to the press could be found egregious enough to cause reputational damage – or "stigma" – Moody has failed to plead sufficient facts to attribute the leak to the Defendants. Additionally, while the court need not reach the question of egregiousness in light of this identified shortcoming, the court remains skeptical that the allegedly leaked information that was publicized about Moody could be construed as accusing him of anything beyond professional incompetence. For example, the Herlihy Letter generally offers the opinion that Moody's work was inadequate, which speaks to competence, and does not appear to assert attacks on his character. See Compl. ¶ 29. In any event, the Complaint fails to specifically identify what, if anything, in the Letter is alleged to have damaged his reputation.[2] See id. And, as already discussed, the news reports that contain the most arguably damaging accusations – such as those related to elder abuse – do not mention Moody by name, do not imply that Moody was responsible, and were published long before Moody's termination. Id. ¶¶ 23-28.

Finally, to the extent Moody contends that the Termination Letter and/or its substance was leaked and thus qualifies as a stigmatizing statement, this argument is unconvincing and in conflict with the established case law excluding accusations of incompetence or poor workplace performance from the ambit of stigma plus claims. See Hyland, 972 F.2d at 1142; Gray, 520 F.2d

---

[2] The court also notes that the Letter appears to have been written on June 24th and received on July 7th of 2014, which is almost three months prior to Moody's termination. See Compl. ¶ 29 and linked document.

12
Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

at 806; Wheaton, 931 F.2d at 617; Turner, 2012 WL 6631490, at *6; Stretten, 537 F.2d at 366

The plain language of the Termination Letter plainly provides that the basis for Moody's termination was "[i]nefficiency, incompetence, or negligence in the performance of duties." Compl. ¶ 31; see also Ex. A to Mot., Dkt. No. 10-2. Moody argues that "in this internet and social media era, such statements, while not carrying a stigma of moral turpitude, can and do result in excluding one permanently from a trade or profession." Opp. at 12. While the court acknowledges the greater prevalence and permanency of information in "this internet and social media era," the court declines Moody's invitation to depart from the well-settled legal precedent of this Circuit to significantly expand the reach of due process claims for reputational harms.

In light of the above discussion, Defendants' Motion to Dismiss Moody's stigma plus procedural due process claim is GRANTED.

### B. Substantive Due Process

The second cause of action for violations of substantive Due Process asserts that Defendants' deprived Moody of his property interest in continued employment with the County, as well as his liberty interest in the right to work in his chosen field. Compl. ¶¶ 56-60.

The doctrine of substantive due process prevents the government from engaging in conduct that "'shocks the conscience' and is 'arbitrary in the constitutional sense.'" County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998) (citations omitted). Where conduct of a government employer is found to meet this standard, and a person's ability to pursue a particular procession was foreclosed as a result, the person may bring a substantive Due Process claim. Engquist v. Or. Dep't of Agric., 478 F.3d 985, 997-98 (9th Cir. 2007); aff'd sub nom. Engquist v. Oregon Dep't of Agric., 553 U.S. 591 (2008). However, in recognizing the right to bring such a claim, the Ninth Circuit made clear that a substantive due process action for a public employer's violations of occupational liberty is limited to extreme cases, explaining:

> We decline to hold that there is no substantive due process claim for a public employer's violations of occupational liberty. Rather, we limit the claim to extreme cases, such as a "government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his

13
Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure."

Id. (quoting Olivieri v. Rodriguez, 122 F.3d 406, 408 (7th Cir. 1997)).

Here, Moody's allegations fall short of this high standard for many of the same reasons discussed in connection with the first cause of action. Moody asserts primarily conclusory allegations that "the County demonstrated shocking indifference to Moody's rights" by terminating him and escorting him from the building, and that the County's "ulterior motive" to scapegoat him for the issues at the OPG "shocks the conscience." Opp. at 16-17; see Compl. ¶¶ 57-60. However, because the court concluded above that none of the state actions as-alleged satisfied the "stigma" prong of Moody's stigma plus claim, the court agrees with Defendants that it logically follows that those same actions "cannot be sufficiently egregious to 'shock the conscience'" for the purposes of a substantive due process claim here. Reply at 10, Dkt. No. 20. Thus, Defendants' Motion is also GRANTED as to the second cause of action.

## IV. ORDER

Based on the foregoing, Defendants' Motion to Dismiss (Dkt. No. 10) is hereby GRANTED. All claims are DISMISSED WITH LEAVE TO AMEND.

Any amended complaint must be filed on or before **August 11, 2017**, and must be consistent with the discussion above. Plaintiff is advised that the court may dismiss this action without further notice for failure to prosecute under Federal Rule of Civil Procedure 41(b) if an amended complaint is not filed by the designated deadline.

**IT IS SO ORDERED.**

Dated: July 7, 2017

EDWARD J. DAVILA
United States District Judge

14
Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS