UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| DON MOODY,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>Defendants. | Case No. 5:15-cv-04378-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 87 |

Defendants County of Santa Clara and Bruce Wagstaff seek summary judgment for Plaintiff Don Moody's remaining substantive due process claim. They argue that, as a matter of law and based on undisputed material facts, Plaintiff cannot make a showing sufficient to establish the essential elements of his claim. The Court finds this motion suitable for consideration without oral argument. *See* N.D. Cal. Civ. L.R. 7-1(b). Having considered the Parties' papers, the Court **GRANTS** Defendants' motion for summary judgment.

**I.  BACKGROUND**

   **A. Factual Background**

Plaintiff worked as Public Administrator/Public Guardian for the County of Santa Clara from September 2008 to September 2014. Second Amended Complaint ("SAC") ¶¶ 22, 32, Dkt. 52. The Office of the Public Guardian is a program in the County's Department of Aging and Adult Services ("DAAS"), which is within the County's Social Services Agency ("SSA"). *Id.* ¶ 18. Plaintiff oversaw three programs: (1) Probate Conservatorships; (2) Mental Health Conservatorships; and (3) Public Administrator. *Id.* ¶ 17. Plaintiff reported to James Ramoni, the Director of DAAS, and to Defendant Bruce Wagstaff, the Director of SSA. *Id.* ¶ 19.

Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
1

In 2012 and 2014, during Plaintiff's tenure, news articles were published criticizing the Public Guardian's Office for its handling of conservatorship cases. *Id.* ¶¶ 23, 24, 25, 27. In 2013 and 2014, the Santa Clara County Civil Grand Jury issued reports critical of the Office and identified operational areas in need of improvement. *Id.* ¶ 26, 28.

In August 2014, Bruce Wagstaff and James Ramoni learned that the Public Guardian's Office had failed for nine months to implement two separate court orders directing the Public Guardian to transfer conservatees from locked mental health facilities to less restrictive placements. Declaration of Paul S. Avilla ("Avilla Decl."), Dkt. 87-2, Ex. A ("Wagstaff Depo.") at 82–83, 85; *Id.*, Ex. B ("Ramoni Depo.") at 127–29. Thereafter, Defendant Wagstaff called a meeting with Plaintiff, James Ramoni, and others to discuss the Public Guardian's failure to comply with the two court orders. Ramoni Depo. at 128. After this first meeting, based on the responses Plaintiff gave, Defendant Wagstaff started to "express serious concerns about [Plaintiff] continuing as Public Guardian." *Id.*

On September 25, 2014, Defendant Wagstaff and James Ramoni met with Plaintiff in a conference room on the fifth floor of the County building (one floor up from Plaintiff's office). *Id.* at 159–61. During this meeting they informed Plaintiff that he was being placed on paid administrative leave for failure to adequately and effectively perform his job duties to the level expected of an executive manager. Wagstaff Depo. at 104, 133. At the end of the meeting, Defendant Wagstaff instructed Ramoni to accompany Plaintiff back to Plaintiff's office to collect Plaintiff's county phone, keys, and security access card. Ramoni Depo. at 162, 164. Ramoni was instructed to escort Plaintiff out of the building. *Id.* at 162, 170–71. Plaintiff alleges that he saw several employees walking back to his office on the fourth floor and when he exited the building. Avilla Decl., Ex. C ("Moody Depo.") at 22–23.

Later that day, Jennifer Wadsworth, a reporter from the Metro newspaper and its online version, San Jose Inside, contacted the County to confirm that Plaintiff had been fired and that he was escorted out of the building. Declaration of James Ramoni ("Ramoni Decl.") ¶¶ 5–6, Dkt. 87-3, Ex. A & B. Gwen Mitchell, the County's Public Relations Officer, is quoted in the news article

Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
2

1  "County Public Guardian Put on Leave, Escorted out of Building" confirming that Plaintiff was
2  placed on leave, but declining to comment further. Avilla Decl., Ex. G.

### B. Procedural History

On October 24, 2019, Defendants filed a Motion for Summary Judgment, arguing that Plaintiff has failed to provide sufficient material facts to meet the essential elements of his claim. Motion for Summary Judgment ("MSJ"), Dkt. 87. Plaintiff filed an opposition on November 7, 2019. Opposition/Response re Motion for Summary Judgment ("Opp."), Dkt. 88. On November 14, 2019, Defendants submitted a reply. Reply re Motion for Summary Judgment ("Reply"), Dkt. 89.

## II. LEGAL STANDARD

A court must grant summary judgment if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to satisfy this burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Id.*

If the moving party meets its burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, Rule 56(c) mandates the moving party win the motion for summary judgment. *See id.*

## III. DISCUSSION

Plaintiff contends, pursuant to 28 U.S.C. § 1983, that he was denied his substantive due process rights. He argues the "walkout" and Defendants subsequent "leak" of negative information about Plaintiff effectively precluded him from achieving future work in his chosen profession. SAC ¶ 62. He also alleges that Defendants' acts were so arbitrary and capricious they

Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
3

"shock the conscience" and are causally connected[1] to Plaintiff's difficulty in securing further employment in the healthcare field. *Id.* ¶¶ 67–69.

### A. Occupational Liberty

#### 1. Nature of the Protected Right

The Fourteenth Amendment's provision that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law," covers a substantive sphere and bars "certain government actions regardless of the fairness of the procedures used to implement them." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 839 (1998) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997); *Daniels v. Williams*, 474 U.S. 327, 331 (1986)); *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (noting substantive due process violations are actionable under Section 1983). "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phx., Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994). "[M]ost courts have rejected the claim that substantive due process protects the right to a *particular* public employment position." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 996–97 (9th Cir. 2007) (emphasis added), *aff'd on other grounds, Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008).

While the Ninth Circuit has not recognized a substantive due process right to a particular public employment position, it has recognized a more general substantive due process claim of occupational liberty. *Engquist*, 478 F.3d at 997. The *Engquist* court concluded that a public employer's violation of occupational liberty, that is the employer's interference with an employee's ability to pursue a chosen field altogether, presented a substantive due process claim. *Id.* at 997–98. Occupational liberty, however, presents a *narrow* substantive due process right—it only reaches a government employer's actions that are tantamount to legislation or regulation that forecloses access entirely to a particular profession. *Id.* at 998. Indeed, the right is limited to

---

[1] Because the Court holds that Plaintiff has not produced sufficient evidence to show he is precluded from achieving work in his chosen field and that Defendants acts were arbitrary and capricious, it does not reach the causation argument.

Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
4

1 "extreme cases," such as a "'government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure.'" *Id.* at 997–98 (quoting *Olivieri v. Rodriguez*, 122 F.3d 406, 408 (7th Cir. 1997)). In such "extreme cases," the concerns about federal courts reviewing every public employee discharge are not implicated because such a claim is only rarely colorable. *Id.* at 998 (citing *Singleton v. Cecil*, 176 F.3d 419, 428–29 (8th Cir. 1999)). Hence, while the substantive due process right to occupational liberty is narrow, it does exist. Plaintiff thus has met his burden to show the existence of a right to continued employment in his chosen field.

### 2. Sufficiency of the Evidence

Defendants argue that the evidence is insufficient to show that Plaintiff was deprived of his right to pursue a profession. Reply at 3–5. The Court agrees.

In order to bring an occupational liberty claim, a plaintiff must show that the "character and circumstances of a public employer's stigmatizing conduct or statements . . . have destroyed an employee's freedom to take advantage of other employment opportunities." *Id.* (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 531 (7th Cir. 2000)). It is insufficient that the employer's stigmatizing conduct has some adverse effect on the employee's job prospects. *Id.* The employee must show that the stigmatizing conduct made it "virtually impossible" to find new employment in his chosen field. *Id.* This comports with caselaw discussing the prohibition on employment in the legislative context—such caselaw limits the occupational liberty cause of action to cases involving a "complete prohibition" on entry into a profession. *See Dittman v. California*, 191 F.3d 1020, 1029 (9th Cir. 1999) (holding complete prohibition implicates person's liberty interest in pursuing an occupation or profession of her choice). Occupation liberty protects only the right to pursue an profession generally, it does not protect the right to pursue a specific job. *Engquist*, 478 F.3d at 998.

Here, Plaintiff argues that the "walk out" and newspaper leak violated his "occupational liberty" because these acts have made it "virtually impossible" for him to find new employment in

Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
5

his chosen field (nursing home and health care administration). Opp. at 10–11. But there is a substantial problem with Plaintiff's theory. He *has* received job offers, interviews, and worked in his chosen field since his termination as Public Guardian. Defendants presented this Court with evidence that:

1. Plaintiff's former employer, Ann Butler, offered to interview Plaintiff for a position in health care administration approximately one month after he left the County. Plaintiff declined this job due to its lower salary. *See* Butler Depo. at 22–24, 27–29; Moody Depo. at 33–35 ("Q: So is it fair to say you decided not to pursue the Willowbrook opportunity because of both the salary and the other opportunities that you were pursuing? . . . . A: Yes.").

2. Plaintiff interviewed for five health care administration positions following his termination. Moody Depo. at 35 ("Q: Did you decide not to pursue [the] position at Willowbrook because of the salary? A: I don't think so much because of the salary. *By that time, there were other interviews going on*. I had an interview with a long-term care company . . . . there was another interview. Most of the interviews I had for long-term care were outside of this county."); Declaration of Donald Moody ("Moody Decl.") ¶ 4.

3. Since leaving the County, Plaintiff was employed (for about a half-year) in the field of healthcare administration as Interim Administrator at Genesis Healthcare, Inc. Avilla Decl., Ex D. at 12 (response to Interrogatory 17).

Plaintiff rebuts this evidence by arguing that: (1) he applied to over five hundred separate employers and only received a response/interview for five of those applications; (2) he currently does not work in the healthcare field; (3) he only briefly worked in the field following his termination; (4) following two years of looking for healthcare related work, he reverted his healthcare professional license to inactive status because he had not been working in the field; and (5) the opportunities he received in the field were well-below his level of experience, usual pay, and skill and thus were not "comparable" employment in his chosen field. Opp. at 10–11 (citing Moody Decl. ¶¶ 4, 5; Moody Depo. at 11, 58–59).

Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
6

Plaintiff offers an expansive interpretation of the standard enumerated in *Engquist*—in his view, *any* effect on his right to pursue his chosen profession at a *comparable* level constitutes a substantive due process violation. Opp. at 10. This is not the standard. The Ninth Circuit in *Engquist* specifically narrowed its holding to "extreme cases" where an employee has been "blacklisted," "de-licensed," or "stigmatized" to such an extent that it is "virtually impossible for the employee to find new employment in his chosen field." 478 F.3d at 997–98. Plaintiff has not proven the newspaper "leak" or walkout stigmatized him to such an extent that he can no longer find employment in the healthcare field. To the contrary, he *has* found employment; he worked in the healthcare industry following his termination and received several additional opportunities in the field. *See supra*. His arguments that he cannot find *comparable* employment are unavailing and an attempt to stretch the occupational liberty standard announced in *Engquist* into something it is not. Stigmatizing statements that merely cause "reduced economic returns and diminished prestige, but not *permanent exclusion* from, or protracted interruption of, gainful employment within the trade or profession" do not constitute a deprivation of liberty. *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 922 (9th Cir. 2013) (collecting cases). Hence, loss of salary or equivalent opportunities do not alone show a violation of occupational liberty. Indeed, Plaintiff's additional opportunities in his chosen industry prove that Defendants' alleged stigmatizing actions did not deprive Plaintiff his occupational liberty since he was not barred from "*all* employment in [his] field." *Id.* (quoting *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1411 (9th Cir. 1988)). Finally, Plaintiff's attempt to compare his personal election to deactivate his license to the government "yank[ing] [his] license" is unconvincing. Opp. at 10 (citing *Engquist*, 478 F.3d at 997–98). Plaintiff elected to inactivate his license after multiple opportunities in the healthcare industry. Plaintiff was thus not deprived of *all* opportunities in the industry and so the comparison to the "government [] yank[ing] the license of an individual in an occupation that requires license" is misplaced and rejected. *Engquist*, 478 F.3d at 997–98.

Accordingly, Plaintiff's contention that his job prospects have been adversely affected, limited, and incomparable to his role as Public Guardian, without some showing of complete

Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
7

exclusion from healthcare administration, is insufficient as a matter of law to prove his occupational liberty rights were violated. *Conn v. Gabbert*, 526 U.S. 286, 292 (1999) (noting that cases dealing with a substantive due process right to choose one's field of private employment all deal with a "complete prohibition of the right to engage in a calling, and not [some] sort of brief interruption"); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 575 (1972) ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."). For these reasons, Defendants' motion for summary judgment as to Plaintiff's occupational liberty claim is **GRANTED**.

### B. Arbitrariness/Capriciousness of Defendants' Conduct

#### 1. Nature of the Protected Right

To establish a substantive due process claim, a plaintiff must first show a government deprivation of life, liberty, or property. *Nunez v. City of L.A.*, 147 F.3d 867, 871 (9th Cir. 1998). Government employees can have a protected property interest in their continued employment if they have a legitimate claim to tenure or if the terms of the employment make it clear that the employee can be fired only for cause. *Egge v. Cty. of Santa Clara*, 2018 WL 2096275, at *4 (N.D. Cal. May 7, 2018) (discussing procedural due process). Plaintiff argues that because he can only be fired for cause, he has established a protectable right to continued employment. Opp. at 5. However, the interest in continued employment discussed in cases like *Egge* refers to a procedural, not substantive, due process right. Indeed, whether a substantive due process right in continued employment even exists is unclear. *See Engquist*, 478 F.3d at 999 ("[S]ubstantive due process protects the right to pursue an entire profession, *and not the right to pursue a particular job*." (emphasis added)); *Burch v. NC Dep't of Pub. Safety*, 158 F. Supp. 3d 449, 461 (E.D.N.C. 2016) ("The right to continued public employment is created by state contract law, or other sources besides the Constitution, and thus does not implicate substantive due process."); *Lum v. Jensen*, 876 F.3d 1385, 1387 (9th Cir. 1989) (noting lack of "clear precedent" that established "an entitlement to substantive due process protection for public employment and the disparity among the other circuit courts in addressing this issue); *Cooper v. Cate*, 2011 WL 5554321, at *5 (E.D.

Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
8

1   Cal. Nov. 5, 2011) ("The Ninth Circuit has recognized that there is a circuit split on the issue of
2   whether a public employee has a substantive due process right to continued employment. The
3   Ninth Circuit has noted that most courts have rejected a substantive due process right to continued
4   public employment. However, the Ninth Circuit has yet to decide whether such a substantive due
5   process right actually exists." (citations omitted)).

Plaintiff fails to provide this Court with any precedent establishing a substantive due process right to continued employment. *See Cty. of Sacramento*, 523 U.S. at 842 (cautioning against "expand[ing] the concept of substantive due process"); Reply at 5 ("Plaintiff fails to cite even one case in which an employment decision was found to violate an employee's liberty interest.").

Instead of pointing this Court to precedent establishing a substantive due process right to continued employment, Plaintiff generally argues that he has a right to be free from "arbitrary and capricious" decision making. Opp. at 11. He argues Defendants conduct violated his substantive due process rights because "it fail[ed] to substantially advance a legitimate government interest." *Id.* The scope of this right, however, is not as broad as Plaintiff argues. Precedent dealing with "abusive executive action" has "repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Cty. of Sacramento*, 523 U.S. at 847 (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992)). Thus, Plaintiff must show not just that Defendants acted unfair or unjustly, he must show Defendants "abus[ed] [their] power, or employ[ed] it as an instrument of oppression." *Id.* (second alteration in original) (quotation marks and citations omitted).

Notably, conscious-shocking behavior is "at the *ends* of tort law's spectrum of culpability." *Id.* at 848. Mere negligence is insufficient—some type of intentional or malicious conduct "intended to injure in some way unjustifiable by any government interest" rises to the "conscience shocking" level required for a violation of substantive due process. *Id.* Due process is not a body of constitutional law that imposes liability whenever someone cloaked with state authority causes harm. *Id.*

Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
9

### 2. Sufficiency of the Evidence

Plaintiff argues Defendants' decision to fire him violated the Due Process Clause because it was arbitrary and capricious since the deficiencies at the Public Guardian's office predated Plaintiff's tenure and he routinely received positive performance reviews. Opp. at 11–12. The truth or falsity of the reasons for his dismissal, however, "neither enhances nor diminishes [Plaintiff's] claim that his constitutionally protected interest in liberty has been impaired." *Bishop v. Wood*, 426 U.S. 341, 349 (1976). Indeed, the federal court is "not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable." *Id.* at 349–50. The Constitution cannot be construed to require "federal judicial review for every such error." *Id.* at 350; *accord Nunez*, 147 F.3d at 873–74 ("There is no general liberty interest in being free from capricious government action. . . . Put simply, not every social injustice has a judicial remedy.").

The "walkout" and "leak" do not rise to the substantive due process violations recognized in other cases. For instance, the intentional and malicious fabrication and dissemination of falsehoods to deprive a government employee of her job has been deemed *potentially* conscience shocking. *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (transforming the plaintiff's substantive due process claims into the particularized constitutional allegations). Similarly, the intentional and deliberate covering up of evidence that supported an employee's claim to a promotion has been found to "shock the conscience." *Robinson v. City of Ark. City, Kan.*, 912 F. Supp. 2d 1045, 1064 (D. Kan. 2012). Outside the employment context, the paradigm for "conscious-shocking" behavior is *Rochin v. California*, 342 U.S. 165 (1952), where the Supreme Court held the "forced pumping of a suspect's stomach [after the suspect swallowed drugs to destroy evidence] [was] enough to offend due process as conduct 'that shocks the conscience' and violates the 'decencies of civilized conduct.'" *Cty. of Sacramento*, 523 U.S. at 846 (quoting *Rochin*, 342 U.S. at 209–10). In *Breithaupt v. Abram*, the Supreme Court concluded that the taking of a sample of blood under the protective eye of a physician did not shock the conscience because it was neither "brutal" nor "offensive." 352 U.S. 432, 435–38 (1957).

Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
10

Much like *Breithaupt*, escorting Plaintiff from the building is not conscious shocking. Additionally, Plaintiff's evidence that Defendants leaked the information to the press does not rise to the "intentional and malicious" fabrication or dissemination of falsehoods discussed in *Velez* and *Robinson*. First, Plaintiff's evidence that Defendants leaked the information is circumstantial (at best) and rests on a house of cards—he argues the proximity of the report to his termination and the failure to investigate the leak show Defendants leaked the information. Opp. at 14. Yet, Plaintiff cites no precedent requiring Defendants to investigate the leak. Second, Plaintiff cannot show dissemination of falsehoods or intentional fabrication by Defendants; he takes issue with an objectively true news article. There is no dispute that Plaintiff was put on leave and escorted from the building and this is exactly what the article at issue reports. Avillo Decl., Ex. G (online article). Third, even if Defendants arbitrarily chose to escort Plaintiff from the building without a stated practice requiring them to do so, this *at most* shows negligence or carelessness. It does not rise to the brutality or offensiveness of forced stomach-pumping, suppression of evidence, or dissemination of falsehoods identified in the above cases. It is not enough that Plaintiff suffered harm (economic, social, or psychological), he must show that Defendants possessed a malicious motive or intended to injure him in some illegitimate way; escorting a terminated employee from the building does not met this burden. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to Plaintiff's arbitrary and capricious/shocks the conscience cause of action.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's substantive due process claims are **DISMISSED with prejudice.** All pretrial deadlines and hearing dates are **VACATED** and any pending motions are **TERMINATED**. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 25, 2019

EDWARD J. DAVILA
United States District Judge

Case No.: 5:15-cv-04378-EJD
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
11